01
02
03
04
05
06           UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON
07                      AT SEATTLE

08  DAVID D. THOMPSON,            )   CASE NO. C05-1995-JLR
                                  )
09        Plaintiff,              )
                                  )
10        v.                      )   REPORT AND RECOMMENDATIONS
                                  )
11  JAMES SPALDING, et al.,       )
                                  )
12        Defendants.             )
    _____)
13

14      Plaintiff David D. Thompson proceeds *pro se* and *in forma pauperis* in this 42 U.S.C. §

15  1983 civil rights matter. In his complaint, plaintiff asserts that his civil rights and "U.S. C.F.R. 42

16  Confidentiality" were violated when he was required to write "Special Offender Unit" on his

17  outgoing mail. (Dkt. 9) Defendants filed a motion for summary judgment pursuant to Federal

18  Rule of Civil Procedure 56(c). (Dkt. 18) Plaintiff did not respond to defendants' motion for

19  summary judgment. The Court deems plaintiff's failure to oppose to be an admission that

20  defendants' motion has merit. *See* Local Rule 7(b)(2). The Court further finds that defendants'

21  motion for summary judgment should be granted as to plaintiff's federal claims and plaintiff's state

22  law claims should be dismissed without prejudice.

REPORT AND RECOMMENDATIONS
PAGE -1

**BACKGROUND**

Plaintiff is currently in the custody of the Washington State Department of Corrections (DOC) at the Monroe Correctional Complex (MCC) in the Minimum Security Unit (MSU). (Dkt. 18, Ex. 1, Att. A) At the time of the events alleged in the Complaint, plaintiff was an inmate at MCC in the Special Offender Unit (SOU). (Dkt. 9) Plaintiff names as defendants James Spalding, former Superintendent of MCC, Ken Quinn, current Superintendent of MCC, Vicqui Heuett, grievance coordinator for MCC-SOU, Sergeant Kenneth Hellman, Shift Sergeant at MCC-MSU, and Dean Mason, former DOC grievance coordinator. (Dkt. 9)

While plaintiff was an inmate at MCC-SOU, Sgt. Hellman issued a memorandum to all MCC inmates stating that inmates would be required to include the full name of their institution and facility (i.e. "Monroe Correctional Complex Special Offenders Unit") as part of their return address on all outgoing mail. (Dkt. 18, Ex. 3, Att. A) This was done to comply with Policy Directive DOC 450.100, which imposed this requirement on all DOC institutions. (Dkt. 18, Ex. 2, Att. A) Upon receiving the memorandum, plaintiff inquired into the meaning of "special" in SOU and he was informed that it meant "mentally ill with the need for medication," among other things. (Dkt. 9) Plaintiff claims that he is not mentally ill and that he was housed at SOU because he was going through a drug treatment program. (Dkt. 18, Ex. 4, Att. A)

Plaintiff filed a grievance challenging the requirement and Ms. Heuett, the grievance coordinator, incorrectly told plaintiff that "special" did not mean mental illness and that the name of the facility did not need to be completely spelled out. (Dkt. 9) Plaintiff filed a second level grievance and Mr. Spalding, then Superintendent of MCC, informed plaintiff that "special" did mean mental illness, among other things, and that the name of the facility did need to be

completely spelled out. (Dkt. 9) Plaintiff filed a third level grievance, to which Mr. Mason, then DOC grievance coordinator, responded, stating that the return address requirement did not divulge medical information. (Dkt. 9) Plaintiff then filed the instant action, alleging violations of his right to privacy under the Washington and Federal Constitutions, as well as his rights under "U.S. C.F.R. 42 Confidentiality." (Dkt. 9)

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Id.* at 322-23. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (citing FED. R. CIV. P. 56(e)).

<u>Right to Privacy</u>

Plaintiff pursues claims pursuant to 42 U.S.C. § 1983. To recover under § 1983, a plaintiff must show "a deprivation of a right secured by the Constitution or laws of the United States, and that the defendant acted under color of state law." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Plaintiff alleges that defendants violated his constitutional right to privacy as to medical information by forcing him to reveal on

his outgoing mail that he was housed in the SOU.

Defendants claim that no medical information was revealed by the SOU notation. They support this claim by pointing to the dictionary definition of the word "special," plaintiff's admission that he does not suffer from a mental illness, and by contending that no one outside the facility would understand what SOU means. The Court finds this explanation disingenuous. First, it is the meaning of the word "special" when read as part of "Monroe Correctional Complex Special Offenders Unit," not the meaning of "special" in isolation, that is relevant. Second, although plaintiff admits he is not mentally ill, he did state that he was in the SOU for a drug treatment program, which is a mental health issue. (Dkt. 18, Ex. 4, Att. A)  Third, the MCC website, readily found by using a search engine, states: "The Special Offender Unit opened in 1981 and accepts inmates who have mental health issues." Monroe Correctional Complex Website, *at* http://www.doc.wa.gov/facilities/mccdescription.htm (last visited August 7, 2006).  Given this information, it appears that plaintiff's medical information was arguably disclosed.

"Individuals have a constitutionally protected interest in avoiding 'disclosure of personal matters,' including medical information." *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004) (citing *Whalen v. Roe*, 429 U.S. 589, 599 (1977)).  This right may be infringed, however, "upon a showing of proper governmental interest." *Tucson Woman's Clinic*, 379 F.3d at 551 (quoting *Planned Parenthood of S. Ariz. v. Lawall*, 307 F.3d 783, 790 (9th Cir. 2002)). The Court must "'engage in the delicate task of weighing competing interests' to determine whether the government may properly disclose private information." *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999) (quoting *Doe v. Attorney General*, 941 F.2d 780, 796 (9th Cir. 1991)). Relevant factors include: "(1) the type of information requested, (2) the potential for harm in any

subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Tucson Woman's Clinic*, 379 F.3d at 551 (quoting *Lawall*, 307 F.3d at 790).

The governmental interest purportedly being served by the disclosure requirement is the safety and security of the public, prison staff, inmates, and prison facilities. (Dkt. 18, Ex. 2, Att. A) The requirement protects the public by making recipients of mail from inmates "fully aware of who is sending mail in case that person does not wish to receive or read mail from offenders." (Dkt. 18, Ex. 2) Plaintiff's countervailing interest is that of non-disclosure of the fact that he suffers from mental health issues. Plaintiff's interest, however, is significantly weakened due to the fact that he retains control over who receives this information by selecting who to write to, and by the fact that this is apparently the only manner in which the information is disclosed to the public. As a result, the government's interest in safety outweighs plaintiff's interest in privacy, and plaintiff's constitutional rights were not violated.[1] Summary judgment for defendants is proper on plaintiff's § 1983 claim.

### Vicarious Liability

Mr. Quinn argues that he is entitled to summary judgment as to plaintiff's § 1983 claim because plaintiff failed to allege his personal participation. Defendants cannot be held liable under § 1983 on a theory of vicarious liability. *See Genzler v. Longanbach*, 410 F.3d 630, 641 (9th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). "At a minimum

---

[1] Having found no constitutional violation, the Court declines to reach defendants' qualified immunity defense.

REPORT AND RECOMMENDATIONS
PAGE -5

plaintiff must show that these officials directly or implicitly authorized, approved, or knowingly a[c]quiesced in the alleged unconstitutional conduct." *Wood v. Housewright*, 900 F.2d 1332, 1341 (9th Cir. 1990) (citing *Buckner v. Nevada*, 599 F.Supp. 788, 791 (D. Nev. 1984)). Defendant did not mention Mr. Quinn in his complaint, and admitted at his deposition that he only sued Mr. Quinn because he was the Superintendent at the time plaintiff filed suit. (Dkt. 18, Ex. 4, Att. A) For this additional reason, Mr. Quinn is entitled to summary judgment on plaintiff's § 1983 claim.

<u>Title 42 of the Code of Federal Regulations</u>

At the end of the Complaint, plaintiff states "U.S. CFR 42 Confidentiality." (Dkt. 9) Several lines before this, plaintiff states that the disclosure requirement "is in violation of Federal and State confidentiality laws." (Dkt. 9) Plaintiff appears to be referring to 42 C.F.R. Part Two (Part Two), which protects confidentiality of patients receiving alcohol and drug prevention and treatment services. *See* 42 C.F.R. § 2.1-.67. Defendants argue that there is no private right of action for such violations.[2]

"It is axiomatic that private rights of action must be created by Congress." *Greene v. Sprint Communications Co.*, 340 F.3d 1047, 1050 (9th Cir. 2003). Unless there is congressional intent to the contrary, the Court should not create a private cause of action for a violation of a statute not providing one. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). Part Two was promulgated pursuant to 42 U.S.C. §§ 290dd-3 and 290ee-3, now codified at 42 U.S.C. § 290dd-2. While 42 U.S.C. § 290dd-2(f) provides a criminal penalty for any person who violates any provision of the statute or regulations, the statute does not create an express private right of

---

[2] There are no published cases on point.

action.

In the absence of an express private right of action, an implied private right of action will be found if Congress intended to create a private right of action. *See Walls v. Wells Fargo Bank*, 276 F.3d 502, 508 (9th Cir. 2002) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)). There is no evidence in the statute or regulations that Congress intended to create a private right of action for violations of the regulations. In fact, Part Two instructs that violations be reported to the United States Attorney for the judicial district in which the violation occurs, 42 C.F.R. § 2.5(a), without mentioning a private right of action, which is a strong indication that criminal sanctions are intended to be the sole remedy for Part Two violations.

In addition, the legislative histories of §§ 290dd-3 and 290ee-3 indicate that their purpose was to encourage individuals with alcohol or drug abuse problems to seek professional help for those problems by assuring them that their records would be kept confidential. *See Whyte v. Conn. Mut. Life. Ins. Co.*, 818 F.2d 1005, 1010 (1st Cir. 1987) (discussing legislative history of § 290dd-3); *United States v. Eide*, 875 F.2d 1429, 1436 (9th Cir. 1989) (discussing legislative purpose of § 290ee-3). Congress appears to have achieved this goal by limiting the release of those records and imposing criminal sanctions for violations. Thus, there is no need for the Court to construe a private right of action to give effect to Congress' purpose. Having found no express or implied right of action, summary judgment for defendants is proper on plaintiff's Part Two claim.

<u>Injunctive Relief</u>

Defendants argue that plaintiff's request for injunctive relief is moot because plaintiff is no longer housed in the SOU. A plaintiff must show a "very significant possibility" of future harm

01 to be entitled to injunctive relief. *Nelsen v. King County*, 895 F.2d 1248, 1250 (9th Cir. 1990)

02 (quoting *Sample v. Johnson*, 771 F.2d 1335, 1343 (9th Cir. 1985)). Claims by prisoners seeking

03 injunctive relief against prison policies are moot when the prisoner is transferred to a different

04 facility where he is no longer subjected to the policy. *See Johnson v. Moore*, 948 F.2d 517, 519

05 (9th Cir. 1991). Since this action was filed, plaintiff has been transferred from the MCC-SOU to

06 the MCC-MSU. (Dkt. 18, Ex. 1, Att. A) Thus, the disclosure requirement no longer requires that

07 plaintiff disclose medical information. Plaintiff's request for injunctive relief is therefore moot and

08 this is an additional reason why defendants are entitled to summary judgment on this claim.

## State Law Claims

10 In addition to his federal claims, plaintiff alleges that his right to privacy under state law

11 was violated. The exercise of pendent jurisdiction to hear state claims is within the discretion

12 of the federal district court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

13 However, "[w]hen federal claims are dismissed before trial ... pend[e]nt state claims also

14 should be dismissed." *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d 646,

15 651 (9th Cir 1984) (citing *United Mine Workers*, 383 U.S. at 726). Plaintiff's federal claims

16 have been dismissed, thus, there is no jurisdiction over his state claims and they should be

17 dismissed without prejudice.

18 / / /

19 / / /

20 / / /

21 / / /

22 / / /

## CONCLUSION

For the reasons set forth above, the Court recommends that defendants' motion for summary judgment be granted with respect to plaintiff's federal claims and plaintiff's state law claims be dismissed without prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 22nd day of August, 2006.

*[signature]*
Mary Alice Theiler
United States Magistrate Judge